**23-16176 & 23-16189**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

PAMELA SIINO,

*Plaintiff & Appellee,*

*v.*

FORESTERS LIFE INSURANCE AND ANNUITY COMPANY,

*Defendant & Appellant.*

U.S. District Court for the Northern District of California
4:20-cv-02904-JST
Jon S. Tigar, District Judge

**Petition for Panel Rehearing and Rehearing En Banc**

Benjamin I. Siminou (CA 254815)       Jack B. Winters, Jr. (CA 82998)
Jonna D. Lothyan (CA 298650)          Sarah Ball (CA 292337)
SINGLETON SCHREIBER, LLP              WINTERS & ASSOCIATES
591 Camino De La Reina, Ste. 1025     8489 La Mesa Boulevard
San Diego, CA 92108                   La Mesa, CA 91942
(619) 550-3579*                       (619) 234-9000
*jlothyan@singletonschreiber.com*      *pjsandiego@gmail.com*
*bsiminou@singletonschreiber.com*      *sball@einsurelaw.com*

*Counsel for Plaintiff & Appellee*
PAMELA SIINO
(*Additional counsel listed on next page*)

*Additional counsel for Plaintiff & Appellee:*

Craig Nicholas (CA 178444)
Alex Tomasevic (CA 245598)
NICHOLAS & TOMASEVIC, LLP
225 Broadway, 19th Floor
San Diego, CA 92101
619-325-0492
*cnicholas@nicholaslaw.org*
*atomasevic@nicholaslaw.org*

TABLE OF CONTENTS

Table of Authorities.................................................................ii

Introduction & Rule 40 Statement .........................................1

Background ...........................................................................6

1.  California law requires insurers to allow
    policy owners to designate additional people
    to receive notices of unpaid premium for life
    insurance policies. ..........................................................6

2.  Appellant terminated Siino's life insurance
    policy without allowing her to designate
    another person to receive notices of unpaid
    premium. .........................................................................7

Reasons to Grant Rehearing ................................................11

1.  The panel overlooked evidence of causation................11

2.  *Small* wrongly decided a question of
    exceptional importance. .................................................12

    2.1  *Small* was wrongly decided. ..............................12

    2.2  *Small* involves an exceptionally
         important issue. .................................................17

Conclusion ...........................................................................26

Statement of Related Cases .................................................27

Form 11. Certificate of Compliance .....................................28

Addendum ...........................................................................29

TABLE OF AUTHORITIES

## Cases

*Allied Premier Ins. v. United Fin. Cas. Co.*
532 P.3d 708 (Cal. 2023).............................................. 14

*Cole v. CRST Van Expedited, Inc.*
932 F.3d 871 (9th Cir. 2019) ..................................... 23

*Deposit Guar. Nat. Bank v. Roper*
445 U.S. 326 (1980) .................................................... 19

*Fireman's Fund Ins. Co. v. Allstate Ins. Co.*
286 Cal. Rptr. 146 (Cal. Ct. App. 1991) .................... 15

*Humana Inc. v. Forsyth*
525 U.S. 299 (1999) .................................................... 24

*Kilby v. CVS Pharmacy, Inc.*
739 F.3d 1192 (9th Cir. 2013) ................................... 22

*Kotlar v. Hartford Fire Ins. Co.*
100 Cal. Rptr. 2d 246 (Cal. Ct. App. 2000) ............... 15

*Maracich v. Spears*
570 U.S. 48 (2013) ...................................................... 18

*McHugh v. Protective Life Ins. Co.*
494 P.3d 24 (Cal. 2021) ............................................. 18

*Minkler v. Safeco Ins. Co.*
561 F.3d 1033 (9th Cir. 2009) ................................... 24

*Molinar v. 21st Century Ins. Co.*
318 Cal. Rptr. 3d 608 (Cal. Ct. App. 2024) ............... 14

*N. River Ins. Co. v. James River Ins. Co.*
    116 F.4th 855 (9th Cir. 2024) .................................... 24

*Ohran v. Nat'l Auto. Ins. Co.*
    82 Cal. App. 2d 636 (Cal. Ct. App. 1947) .................. 15

*Pitt v. Metropolitan Tower Life Insurance Co.*
    2025 WL 556052 (2025) .............................................. 23

*Small v. Allianz Life Insurance Company of*
    *North America*
    122 F.4th 1182 (9th Cir. 2024) .................................. 24

*Smith v. Pacificare Behav. Health of Cal.*
    113 Cal. Rptr. 2d 140 (Cal. Ct. App. 2001) ............... 22

*Thomas v. State Farm Life Insurance Co.*
    2021 WL 4596286 (9th Cir. 2021 2021) .................... 16

*Todd v. Societe Bic, S.A.*
    21 F.3d 1402 (7th Cir. 1994) ..................................... 17

*Transamerica Insurance Co. v. Tab Transportation, Inc.*
    906 P.2d 1341 (1995) ................................................. 14

## Statutes

California Insurance Code
    § 662 ......................................................................... 16
    § 10113.71 ................................................................... 6
    § 10113.72 ................................................................... 1

Fla. Stat.
    § 627.728 ................................................................... 20
    § 10113.72 ................................................................. 23

Me. Stat. § 2739 .............................................................. 20

N.J. Stat. Ann. § 17:29C-10 .............................................. 20

N.Y. Ins. Law § 3426 ........................................................ 20

Wis. Stat. 344.34 .............................................................. 20

## Federal Rules

Federal Rules of Civil Procedure

    Rule 23 ........................................................... 18

    Rule 40 ............................................................. 2

## State Rules

California Rules of Evidence

    Rule 23 ........................................................... 18

    Rule 40 ............................................................. 1

California Rules of Court

    Rule 8.548 ...................................................... 23

## Other Authorities

John L. Watkins, Erie Denied: *How Federal Courts Decide
    Insurance Coverage Cases Differently and What to Do
    About It*, 21 Conn. Ins. L.J. 455, 457 (2015) .............. 21

Restatement (Second) of Contracts § 347 ......................... 21

## INTRODUCTION & RULE 40 STATEMENT

This appeal arose out of a summary judgment for Pamela Siino after Foresters Life Insurance and Annuity Company terminated her life insurance policy without providing her with notices of unpaid premium and impending termination, and an opportunity to designate other persons to receive those notices, as required by California Insurance Code sections 10113.71 and 10113.72 (the "Statutes").

The summary judgment should have been affirmed. Section 10113.72(c) states: "No individual life insurance policy shall ... be terminated for nonpayment of premium unless the insurer ... gives notice to the policy owner and to the person ... designated pursuant to subdivision (a)." It is undisputed Foresters did not do so. Thus, Siino's policy could not be terminated and she was entitled to have it reinstated.

Despite agreeing that Foresters violated the Statutes' notice and designee requirements, the *Siino* panel reversed,

1

citing *Small v. Allianz Life Insurance Company of North America*, 122 F.4th 1182 (9th Cir. 2024).

Contrary to section 10113.72(c)'s text, *Small* has been wrongly interpreted to hold that even when an insurer terminates a policy for unpaid premium without providing notices request by the Statutes, the policy remains terminated *unless* the plaintiff shows the violation of the Statutes caused their damages. *Small*, 122 F.4th at 1193.

Rehearing here is warranted for two reasons.

*First*, panel rehearing is required because the panel's opinion "misapprehended" important facts. *See* Fed. R. App. P. 40(b)(1)(A)

The panel held that "[e]ven if the insurer had sent Siino the requisite notices, they would not have reached her where the record makes clear that Siino moved and failed to successfully update her address on file." (Memo. Opn. at 3.)

But that holding does not address Foresters' failure to allow Siino to designate a third person to receive notices. Had Foresters notified Siino of her right to designate a third

person, she would have done so, and contends that person

would have received the notices Siino did not receive since

her address was not updated. Siino also showed she would

have likely paid the premium upon receiving the notice in

light of evidence she had requested Foresters reinstate the

policy when she learned it had lapsed. (2-ER-139, 142–143,

238.) Thus, the record shows Siino would have avoided a

lapse in coverage if Foresters complied with the Statutes.

*Second*, the panel's reliance on *Small* warrants

rehearing *en banc* because it concerns a "question of

exceptional importance." *See* Fed. R. App. P. 40(b)(2)(D)

That question—the so-called "causation question" is as

follows:

> When an insurer terminates coverage without
> providing notices or designation rights required
> by California Insurance Code sections 10113.71
> 10113.72, must a plaintiff prove the policy owner
> would have avoided a lapse in coverage but for
> the insurer's failure to provide the requisite
> notices or designation rights in order to reinstate
> coverage or obtain its benefits?

By answering that question in the affirmative*, Small*

not only misread California law, it trampled on federalism

by nullifying critical protections in a multi-billion-dollar insurance industry, the regulation of which is entrusted to the California's police powers under the doctrine of reverse-preemption.

If these are not sufficient reasons for an *en banc* Court to reconsider *Small*, they compel certifying the causation question to the California Supreme Court.

Indeed, a different panel recently certified a question regarding the Statutes to the California Supreme Court, *see Pitt v. Metropolitan Tower Life Insurance Co.*, 2025 WL 556052 (9th Cir. Feb. 20, 2025), and certification here is no less warranted than there, and would allow the California Supreme Court to efficiently address both issues concurrently. This is particularly so because the causation question here is likely to present in *Pitt* on remand, assuming the California Supreme Court resolves that issue in Pitt's favor.

Moreover, the United States Supreme Court is considering a petition for writ of certiorari—filed by the

same counsel representing the defendant-insurer in *Small*—contending that this Court's refusal to certify questions of state law to state courts of last resort violates federalism principles. The United States Supreme Court recently ordered the respondent to address the petition. *Premium Nutrition Corp. v. Montera*, No. 24-999 (Apr. 9, 2025).

The plaintiff in *Small*—represented by the same counsel as Siino—intends to file her own petition for certiorari asking the United States Supreme Court to address the circuit split on certification standards based on this Court's refusal to certify the foregoing causation question to the California Supreme Court.

If this Court is not prepared to certify the causation question to the California Supreme Court as Siino urges, it should at least defer issuing the mandate here until the United States Supreme Court decides whether to grant certiorari in *Montera* or *Small*.

**BACKGROUND**

**1.  California law requires insurers to allow policy owners to designate additional people to receive notices of unpaid premium for life insurance policies.**

Life insurance provides "critical protection" through which "Californians ensure that their families … are protected by a financial safety net." *McHugh v. Protective Life Ins. Co.*, 494 P.3d 24, 27 (Cal. 2021). The Legislature found consumers often face significant difficulty securing coverage when they lose life insurance they have had "for many years" simply because "a single premium payment is accidentally missed[.]" *Id.* at 42.

In 2012, the California Legislature enacted California Insurance Code sections 10113.71 and 10113.72 (the "Statutes") to provide policy owners with "critical safeguards to avoid defaulting." *McHugh*, 494 P.3d at 35.

First, they require insurers to give policy owners a 60-day "grace period" to pay past-due premium before cancelling a policy. Cal. Ins. Code § 10113.71(a).

6

Second, they require insurers to notify policy owners of impending termination at least 30 days before the policy lapsed. *Id.*, §§ 10113.71(b)(1), 10113.72(c).

Third, they require insurers to allow policy owners to designate other people to receive copies of notices. *Id.*, §§ 10113.72(a), (c), 10113.71(b)(1).

The Statutes confirm an insurer's failure to follow these requirements prevents it from terminating a policy for unpaid premium: "No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer … gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a)." *Id.*, § 10113.72(c).

## 2.    Appellant terminated Siino's life insurance policy without allowing her to designate another person to receive notices of unpaid premium.

In 2010, Siino purchased a life insurance policy from Foresters in California. (3-ER-365–66.) Siino's policy required annual premiums. (2-ER-212–214, 218.) Siino timely paid the premiums due under the policy. (2-ER-238.)

7

Siino's husband had also purchased two separate life insurance policies from Foresters. (2-ER-108, 302).

The Siinos moved several times after Siino purchased her policy. (2-ER-111.) Siino's husband would update their addresses for both policies by either calling Foresters or writing the Siinos' new address on the bill. (2-ER-111–112, 120–121, 125–126, 137.)

In January 2016 and 2017, the Siinos did not receive premium notices in the mail. However, Foresters emailed Siino's husband and reminded him that the premium payment was due on Siino's policy. (2-ER-131–136.) The Siinos advised Foresters that Siino had not been receiving notices on her policy. The Siinos also confirmed their proper mailing address with Foresters on more than one occasion. (2-ER, 134–137, 238; 3-ER-366.) They also had their mail forwarded from their prior address. (2-ER-130–131.)

In January 2018, Siino missed her premium payment because Foresters failed to provide her notice. (3-ER-367.)

8

Foresters terminated Siino's policy 31-days after the premium was due, rather than waiting 60 days as the Statutes require. (2-ER-238.) Siino did not receive any notice from Foresters regarding the premium due or the lapse or termination notice required under the Statutes. (2-ER-238; 3-ER-367.)

In early 2019, after Siino realized she had not received notices regarding her policy, Siino's husband contacted Foresters to pay the premium on Siino's policy and was informed that the policy had been terminated. (2-ER-139, 142–143, 238.)

In March 2019, Foresters refused to reinstate Siino's policy, and advised that her only option was to apply for new coverage, which required a medical examination. (2-ER-235, 238; 3-ER-367.) Siino acquired a policy from a different company. (2-ER-88, 235.) In April 2020, Appellant stated it could reinstate her policy if she paid the missed premiums. (2-ER-232.) But Siino had already acquired and paid for a different life insurance policy. (2-ER-232.)

Foresters never notified Siino of the right to designate a third party to receive notices of unpaid premium or impending termination as the Statutes require. (2-ER-238; 3-ER-366; 1-SER-7–9, 21, 23–27.)

In 2020, Siino sued Foresters, then sought summary judgment on her declaratory judgment causes of action. (2-ER-200–04; 3-ER-358–380.) The district court granted summary judgment for Siino, finding Foresters failed to comply with the Statutes. (1-ER-14–15.) Foresters appealed.

On April 1, 2025, a panel issued a memorandum opinion reversing in part the summary judgment for Siino. The panel agreed Foresters "violated the Statutes' Pretermination Notice Requirement and Designee Notice Requirement." (Memo. Opn., at 3.) Nonetheless, applying *Small*, it reversed the court's declaration that Siino's insurance policy remained valid, holding this declaration required evidence of causation that Siino failed to provide. (Memo. Opn. at 2–3.)

## REASONS TO GRANT REHEARING

## 1.    The panel overlooked evidence of causation.

The panel found Foresters did not comply with the Statutes. (Memo opn., p. 3.) Still, it held Foresters's failure to send the required notices did not cause Siino's policy to lapse because she did not update her mailing address and would not have received the notices anyway. (Memo opn., p. 3.) This holding ignores the third-person designee requirement and its purpose—for someone other than the insured to receive notices in the event the insured does not.

This holding also overlooks evidence in the record that Siino would have paid the premium if she received the notices, either directly or through her third-person designee. Indeed, Siino requested Foresters reinstate the policy when she learned it had lapsed and purchased a different policy when Foresters refused. (2-ER-139, 142–143, 232, 238.)

Contrary to the panel's holding, Siino did present evidence to support Foresters's failures to comply with the Statutes caused her policy to lapse.

**2.** *Small* **wrongly decided a question of exceptional importance.**

Rehearing *en banc* is warranted because the panel's reliance on *Small* was misplaced: As discussed below, *Small* wrongly decided a question of exceptional importance.

## 2.1. *Small* **was wrongly decided.**

*Small* is contrary to [1] the text of section 10113.72, [2] the California Supreme Court's statements in prior decisions, [3] 80 years of published Court of Appeal decisions involving similar statutes, and [4] even the Ninth Circuit's own prior decision on this exact question.

**[1]** *Small* contradicts the statute's text. Section 10113.72(c) states: "No individual life insurance policy *shall lapse or be terminated for nonpayment of premium unless* the insurer … gives notice … pursuant to subdivision (a)." (Emphasis added.) This language provides that an insurer's violation of the Statutes' notice provisions means the policy cannot lapse for nonpayment of premium. If a life insurance cannot terminate a policy for unpaid premium where it fails to provide requisite notices, it follows that a policy owner or

beneficiary need not show a causal nexus between an insurer's failure to provide requisite notices and unpaid premium in order to reinstate coverage or obtain death benefits due under a policy. Any contrary conclusion ignores the statute's plain text.

**[2]** *Small* also contradicts the California Supreme Court's statements regarding how the Statutes and similar insurance statutes work.

In *McHugh*, the California Supreme Court endorsed Siino's understanding of the Statutes: "Those provisions *clearly establish … insurers cannot terminate policies for a premium lapse until they give … notice*[.]" 494 P.3d at 45 (italics added); *id.* ["When the Legislature enacted [the Statutes], it … kept such policies from being revoked when policy owners lapsed in paying premiums."]; *id.* ["This language states a substantive rule of law … that precludes lapse or termination of any policy absent provision of the required notice."] (Jenkins, J., conc.).)

13

And in *Transamerica Insurance Co. v. Tab Transportation, Inc.*, 12 Cal.4th 389 (1995), the California Supreme Court—construing an auto-insurance statute analogous to section 10113.72(c)—concluded that, because "there was no compliance with the notice requirements," the "policy was still in effect at the time of the accident." *Id.* at 400, *abrogated by statute as recognized by Allied Premier Ins. v. United Fin. Cas. Co.*, 15 Cal.5th 20 (2023).

*McHugh* and *Transamerica* show that an insurer's noncompliance with the Statutes keeps a policy in force despite unpaid premium. Not coincidentally, *Small* did not address either case.

**[3]** *Small* also contradicts 80 years of Court of Appeal decisions which, when construing insurance statutes similar to section 10113.72, held that an insurer's noncompliance with statutory pretermination notice requirements keeps the policy in force despite nonpayment of premium. *See Molinar v. 21st Century Ins. Co.*, 318 Cal.Rptr.3d 608, 609 (Cal. Ct. App. 2024) ("Because the insurer did not give advance notice

14

of cancellation to the adult daughter, the policy was still legally in effect ….”); *Kotlar v. Hartford Fire Ins. Co.*, 100 Cal.Rptr.2d 246, 249 (Cal. Ct. App. 2000) (“If a cancellation is defective, the policy remains in effect even if the premiums are not paid.”); *Fireman’s Fund Ins. Co. v. Allstate Ins. Co.*, 286 Cal.Rptr. 146, 148 (Cal. Ct. App. 1991) (“Fireman’s failed to give the required notice of cancellation to the PUC. Thus, we conclude Fireman’s policy was in full force and effect on the date of the accident giving rise to damage claims.”); *Ohran v. Nat’l Auto. Ins. Co.*, 82 Cal.App.2d 636, 643 (Cal. Ct. App. 1947) (“[T]he Legislature … intended therein to limit this right of cancellation according to the strict terms of the statute, making such notice indispensable for an effective termination ….”).

*Small* disregarded those decisions because they involved short-term liability policies. *Small*, 122 F.4th at 1194 [“We believe these California short-term insurance cases have distinguishable facts that make the reasoning behind these rulings less persuasive in the life insurance

context."].) But as the California Supreme Court explained in *McHugh*, section 10113.72 was designed to require life insurers to offer the same anti-lapse protections that insurers had long provided in other insurance contexts. *McHugh*, 494 P.3d at 30 (noting the Statutes "require life insurers to provide notice when canceling a policy … for nonpayment of a premium" insurers were already required to provide "when cancelling other forms of insurance" like "automobile policies" (citing Cal. Ins. Code, § 662(a))).

**[4]** Finally, *Small* also contradicts this Court's prior decision on this exact issue. In *Thomas v. State Farm Life Insurance Co.*, 2021 WL 4596286, at *1 (9th Cir. 2021), the Ninth Circuit held that "an insurer's failure to comply with [the Statutes'] statutory requirements means that the policy cannot lapse," and therefore that "evidence that the policies would not have lapsed even had [the insurer] complied with [the Statutes] … is not necessary for [the plaintiff] to prevail."

16

*Small* disregarded *Thomas* because it was short on analysis. But unlike *Small*, *Thomas* cited the California Supreme Court's statements in *McHugh*.

Rather than [1] the Statutes' text, [2] the California Supreme Court's statements in *McHugh* and *Transamerica*, [3] 80 years of Court of Appeal decisions, or [4] this Court's prior decision in *Thomas*, *Small* relied on misplaced policy concerns. *Small*, 122 F.4th at 1197 ("public policy favors the 'causation' theory").

But a federal court sitting in diversity cannot ignore clear statutory law simply because it thinks a different rule would be better policy. *E.g.*, *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1414 (7th Cir. 1994) ("When this court sits in diversity, federalism requires us to enforce the substantive law of the forum state, even when we conclude we see a more enlightened path.").

## 2.2. *Small* involves an exceptionally important issue.

Compounding *Small*'s misapprehension of California law, even if *Small* were confined to life insurance in

California, it still would have enormous public policy ramifications.

The Statutes reflect the California Legislature's policy determination that the best way to prevent unintended lapses was "to protect *all* policy owners from losing coverage." *McHugh*, 494 P.3d at 42, 44. But under *Small*, *no one* would be protected.

First, *Small* ensures most owners and beneficiaries of policies terminated in violation of the Statutes will never discover they have a claim. Class notice informs people they may have claim to pursue. *Maracich v. Spears*, 570 U.S. 48, 73 (2013). But as *Small* illustrates, its causation requirement precludes class treatment, even one seeking only declaratory relief under Rule 23(b). 122 F.4th at 1199–1200. And without a class, there is no *class notice*. *See* Fed. R. Civ. P. 23(c)(2)(A).

Second, *Small* makes it difficult, if not impossible, for owners and beneficiaries who discover their policies were terminated in violation of the Statutes to obtain relief.

18

Precluding class action makes many cases cost-prohibitive. *Deposit Guar. Nat. Bank v. Roper*, 445 U.S. 326, 334 & n.6 (1980). And as the insurers concede, the causation standard will make even economically viable cases virtually impossible to prove. *See* Brief for Appellant, *Small v. Allianz*, No. 23-55821, ECF No. 20, at 29–30, 37. This is especially so given that many of these disputes only "arise after policy owners have died." *McHugh*, 494 P.3d at 44.

Thus, *Small* ensures insurers can violate the Statutes with impunity. This would be no small loss: California is the largest life-insurance market in the United States, with over 10 million policies and $229 billion in life insurance sold annually. *See* Brief of Amici Curiae AARP and AARP Foundation Supporting Plaintiff-Appellate/Cross Appellee at 14–15, Dkt. No. 32.1, *Poe v. N.W. Mut. Life Ins. Co.* (9th Cir. Mar. 15, 2024) (Nos. 23-3124 & 23-3243).

But *Small*'s seismic effects will not be limited to life insurance. On the contrary, *Small*'s core conclusion—that [1] the only way to obtain relief for a violation of a

19

pretermination-notice provision is a breach-of-contract claim, and [2] the only way to prove a breach-of-contract claim for the violation of a pretermination-notice provision is to show a causal connection between the insurer's failure to provide the pretermination notice and the lapsed coverage—will apply with equal force in *any* insurance context, including auto, home, and other liability policies. Thus, so long as *Small* is good law, it undermines critical safeguards for all $3.8 trillion in insurance coverage in California. *See* Brief of Amici Curiae Association of California Life and Health Insurance Companies and the American Council of Life Insurers Supporting Appellee/Cross-Appellant, at 1, 21, Dkt. No. 53.1, *Poe v. N.W. Mut. Life Ins. Co.* (9th Cir. June 11, 2024) (Nos. 23-3124 & 23-3243).

For the same reason, *Small* will undermine anti-lapse statutes nationwide. Many states have anti-lapse statutes like California. *E.g.*, Fla. Stat. § 627.728(3)(a); Me. Stat. § 2739; N.J. Stat. Ann. § 17:29C-10; N.Y. Ins. Law § 3426(e)(1); Wis. Stat. § 344.34. And the driving force in

*Small*'s analysis—the need to prove causation in a breach-of-contract claim—is a feature of American common law. *See* Restatement (Second) of Contracts § 347. Thus, so long as *Small* is good law, it will undermine anti-lapse protections nationwide in perpetuity. *See* John L. Watkins, *Erie Denied: How Federal Courts Decide Insurance Coverage Cases Differently and What to Do About It*, 21 Conn. Ins. L.J. 455, 457 (2015) (noting that "the consequences of an incorrect *Erie* guess in coverage cases can have profound practical implications beyond the immediate case because insurance policies are typically written on common forms" and that "[a] mistaken determination in one case may thus be repeated many times over in being applied as persuasive precedent to other claims").

At the risk of stating the obvious, the nationwide coverage chaos *Small* will unleash is a flagrant affront to federalism: Federal law reflects "a policy declaration that it is in the public interest that the primary regulation of the business of insurance be in the states, not in the national

government." *Smith v. Pacificare Behav. Health of Cal.*, 93 Cal.App.4th 139, 152–153 (2001); *accord Humana Inc. v. Forsyth*, 525 U.S. 299, 306 (1999). Thus, insurance is subject "to substantial regulation under the state's police power." *McHugh*, 494 P.3d at 30.

Yet, because of CAFA, "many cases of this type have been and likely will continue to be removed to federal court and thus evade review by [state] courts." *Kilby v. CVS Pharmacy, Inc.*, 739 F.3d 1192, 1196 (9th Cir. 2013).

Given *Small*'s massive ramifications in an area traditionally entrusted to state regulation, and the impediments for state courts to correct *Small*'s mistake, it is critical for this Court to rehear this case and thereby revisit *Small* before it freezes *Small* into place in perpetuity.

The recent certification in *Pitt* and the pending Petition for Certiorari on certification is cause for this Court to certify the causation question.

*Siino* and *Small* are two of several appeals pending in this Circuit involving the Statutes. In one of those appeals—

*Pitt*, 2025 WL 556052—the panel certified, and the California Supreme Court accepted, the following question:

> Do California Insurance Code §§ 10113.71 and 10113.72 apply to life insurance policies originally issued or delivered in another state but maintained by a policy owner in California?

The causation issue was raised in the briefing with this Court in *Pitt* and is likely to be briefed in the California Supreme Court as well.

The fact that the California Supreme Court will review at least one question regarding the Statutes, and may speak on the causation issue, means this Court should certify the causation question to the California Supreme Court under California Rules of Court rule 8.548. Indeed, the causation question meets all of the criteria for certification:

[1] Certification is proper where there is no controlling state precedent. *Cole v. CRST Van Expedited, Inc.*, 932 F.3d 871, 877 (9th Cir. 2019). And if the text of section 10113.72 and the California Supreme Court's statements in *McHugh* are not sufficient to decide the case for Siino, then there is no

controlling California precedent directly on point. *Small*, 122 F.4th at 1196.

[2] Certification is proper where "courts have reached different answers." *Minkler v. Safeco Ins. Co.*, 561 F.3d 1033, 1035 (9th Cir. 2009). And the causation question has led to significant disagreement among the courts to consider the question. *Id.* at 1193 & n. 2–3;

[3] Certification is proper if "the question presents important public policy ramifications." *N. River Ins. Co. v. James River Ins. Co.*, 116 F.4th 855, 858 (9th Cir. 2024). And as discussed, the causation question—by undermining critical anti-lapse protections in the entire insurance industry nationwide—has tremendous public-policy ramifications.

[4] Certification is proper where necessary to promote "federalism." *N. River Ins. Co.*, 116 F.4th at 857. And the causation question concerns insurance regulation, an issue uniquely within state policy powers. *Humana*, 525 U.S. at 306.

24

Notably, no Circuit precedent precludes a panel from certifying a question of state law to a state court of last resort despite a published opinion on the same issue. And certainly nothing precludes this *en banc* Court from asking the California Supreme Court to decide the issue rather than adhering to *Small*'s suspect *Erie* guess in perpetuity.

Were this Court to refuse to certify the causation question to the California Supreme despite all the foregoing, it would only further underscore this Court's tendency to under-utilize the certification process to the detriment of federalism, and to the frustration of litigants on both sides of the isle. That tendency is the subject of a petition for writ of certiorari pending before the United States Supreme Court in a petition for certiorari in *Premium Nutrition Corp. v. Montera*, No. 24-999 (Apr. 9, 2025). In the coming weeks, Small's counsel will file a similar petition for certiorari based on this Court's refusal to certify the Statutes' causation issue to the California Supreme Court.

But in the event this Court is not inclined to certify the causation question to the California Supreme Court despite all of the above, this Court should at least refrain from issuing the mandate until the California Supreme Court renders its opinion in *Pitt* or the United States Supreme Court adjudications the petitions for certiorari in *Montera* and *Small*.

## CONCLUSION

For the foregoing reasons, this Court should grant panel rehearing and/or rehearing *en banc*. Alternatively, this Court should certify the causation question to the California Supreme Court.

May 15, 2025                    Respectfully submitted,

                              *s/ Benjamin I. Siminou*
                              Benjamin I. Siminou
                              SINGLETON SCHREIBER, LLP

## STATEMENT OF RELATED CASES

The following appeals now pending in this Court involve the same issues as this appeal (the proper interpretation of California Insurance Code sections 10113.71 and 10113.72):

- *Farley v. Lincoln Benefit Life Co.*, No. 23-16224

- *Poe v. Nw. Mut. Life Ins. Co.*, Nos. 23-3124, 23-3243

- *Pitt v. Metro. Tower Life Ins. Co.*, No. 23-55566

- *Moriarty v. Am. Gen. Life Ins.*, No. 23-3650

- *Small v. Allianz Life Ins. Co. of North America*, No. 23-55821

- *Park v. AXA Equitable Life Ins. Co.,* No. 23-55130

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *https://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** 23-16176 & 23-16189

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 40-1, the attached petition for panel

rehearing/petition for rehearing en banc/response to petition is *(select one)*:

⦿ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words:** 4,047 .
*(Petitions and responses must not exceed 4,200 words)*

**OR**

◯ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** s/ Benjamin I. Siminou **Date** 5/15/2025
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/24*

# ADDENDUM

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PAMELA SIINO, Individually and on behalf of the Class, | No. 23-16176 |
| *Plaintiff-Appellee,* | D.C. No. 4:20-cv-02904-JST |
| v. | |
| FORESTERS LIFE INSURANCE AND ANNUITY COMPANY, a New York Company, | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted January 14, 2025
Pasadena, California

Filed April 1, 2025

Before: JOHNNIE B. RAWLINSON and MILAN D.
SMITH, JR., Circuit Judges, and JED S. RAKOFF,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

## SUMMARY**

### California Insurance Law / Declaratory Relief

The panel affirmed in part and reversed in part the district court's summary judgment in favor of Pamela Siino in her action for declaratory relief challenging Foresters Life Insurance and Annuity Company's termination of her policy for nonpayment of premiums.

Siino's claims were premised on the insurer's violation of two statutes, sections 10113.71 and 10113.72 of the California Insurance Code (the Statutes), which set forth a pretermination notice scheme designed to minimize the chance that policy holders would inadvertently default. Siino alleged that the insurer violated the Designee Notice Requirement (requiring insurers to notify policy owners of their right to designate at least one person to receive notice of lapse or termination of policy for nonpayment of premium) and the Pretermination Notice Requirement (requiring insurers to provide notice regarding impending termination for nonpayment at least 30 days before termination). Siino sought a declaration that (1) the insurer failed to comply with the Statutes in terminating her policy, (2) her policy remained valid and enforceable, (3) the insurer could not require her to pay back her overdue premiums. The district court granted the request in part, declaring that the insurer had wrongfully terminated Siino's policy and that her policy would remain valid so long as Siino tendered all unpaid premiums.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel disagreed with the insurer that Siino's request for declaratory relief was duplicative of her breach of contract claim, and concluded that the district court did not abuse its discretion in entertaining the request. Applying *Small v. Allianz Life Insurance Co. of North America*, 122 F.4th 1182 (9th Cir. 2024), the panel held that the district court did not err in granting the first portion of Siino's requested relief—a declaration that the insurer violated the Statutes—because Siino provided all necessary evidence to support the claim. The district court did not err in finding that the insurer violated the Statutes' Pretermination Notice Requirement and Designee Notice Requirement.

However, the panel held that the district court erred in granting the second portion of Siino's requested relief—a declaration that her insurance policy remained valid— because this declaration required evidence of causation that Siino failed to provide. Even if the insurer had sent Siino the requisite notices, they would not have reached her where the record makes clear that Siino moved and failed to successfully update her address on file.

Because all of Siino's other claims were dismissed with prejudice, the panel remanded to the district court solely for the purpose of entering final judgment.

---

## COUNSEL

Benjamin I. Siminou (argued) and Jonna D. Lothyan, Singleton Schreiber LLP, San Diego, California; Alex Tomasevic, Nicholas & Tomasevic LLP, San Diego, California; Sarah Ball and Jack B. Winters Jr., Winters & Associates, La Mesa, California; for Plaintiff-Appellee.

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 39 of 62

Jarrett E. Ganer (argued) and Thomas F. A. Hetherington, McDowell Hetherington LLP, Houston, Texas; James M. Chambers, McDowell Hetherington LLP, Arlington, Texas; Jodi K. Swick, McDowell Hetherington LLP, Oakland, California; for Defendant-Appellant.

# OPINION

M. SMITH, Circuit Judge:

In this insurance action arising under Sections 10113.71 and 10113.72 of the California Insurance Code, Defendant-Appellant Foresters Life Insurance and Annuity Company (FLIAC) challenges the district court's entry of summary judgment in favor of Plaintiff-Appellee Pamela Siino. Siino, whose FLIAC policy was terminated for nonpayment of premiums in 2018, sought a judicial declaration that (1) FLIAC failed to comply with the Insurance Code in terminating her policy, (2) her policy remained valid and enforceable, and (3) FLIAC could not require her to pay back her overdue premiums. The district court granted this request in part, declaring that FLIAC had wrongfully terminated Siino's policy and that her policy would remain valid so long as Siino tendered all unpaid premiums. FLIAC argues that this result was erroneous, first, because Siino's requested relief was duplicative of her other claims, and, further, because Siino failed to establish all necessary elements to support her requested declaratory relief.

We disagree with FLIAC that Siino's requested relief was duplicative and conclude that the district court did not abuse its discretion in entertaining the request. Nevertheless, following our recent opinion in *Small v. Allianz Life*

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 40 of 62
Case: 23-16176, 04/01/2025, ID: 12925580, DktEntry: 69-1, Page 5 of 27

SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.                5

*Insurance Co. of North America*, 122 F.4th 1182 (9th Cir. 2024), we reach a mixed result on the merits of the relief that the district court granted. We conclude that the district court did not err in granting the first portion of Siino's requested relief—a declaration that FLIAC violated the Insurance Code—because Siino provided all necessary evidence to support this claim. But we find that the district court did err in granting the second portion of Siino's requested relief—a declaration that her insurance policy remained valid—because this declaration required evidence of causation that Siino failed to provide. As a result, we affirm in part and reverse in part the declaratory relief that the district court granted. Because all of Siino's other claims were dismissed with prejudice, we remand to the district court solely for the purpose of entering final judgment.

## FACTUAL BACKGROUND

In 2010, Siino and her husband, nonparty Salvatore Siino, each purchased a life insurance policy from FLIAC. Siino's policy was a twenty-year level term policy with $100,000 in face value, meaning that during the first twenty years of the policy, Siino could maintain coverage by paying a fixed annual premium. The policy provided a "[g]race [p]eriod of 31 days . . . for payment of each premium," and stated that, although the "Policy w[ould] continue in force" during the grace period, "coverage . . . w[ould] terminate" if a "[g]race [p]eriod end[ed]" without the payment of the required premium." Siino's annual premium payment was due on January 26 of each year.

From 2010 to 2018, FLIAC sent Siino annual physical notices regarding her upcoming premium payments. However, in 2014, Siino moved away from the address that FLIAC had on file, and although she attempted to submit a

change-of-address request, it was deemed invalid because she did not sign it.[1]  As a result, although FLIAC continued to send Siino annual premium due notices, Siino no longer received them, and she ultimately failed to pay her premium due on January 26, 2018.  FLIAC followed up by letter on February 26, 2018, notifying Siino that her policy had "lapsed" and stating that she "still ha[d] the opportunity to reinstate [her] policy by sending in the premium . . . within 30 days," or by March 28, 2018.  But Siino again did not receive the letter, and she failed to submit her overdue premium by the March deadline.

In 2019, Siino's husband realized that Siino may have missed a premium payment and reached out to the couples' FLIAC agent, Austin Batista, to "check into" the status of her policy.  Batista responded that Siino's policy had lapsed in 2018 due to her failure to pay the premium due that year.  He explained that Siino "c[ould] submit a reinstatement application," including an updated medical examination, "in order to get [her policy] in force."  But Siino declined to submit a reinstatement application or to proffer the premium payments she had missed.  Instead, some time before March 2020, she purchased a new life insurance policy from another provider.[2]

---

[1] Although Siino's change-of-address request was deemed invalid, her husband submitted a valid change-of-address request with respect to his own policy.  He continued to receive notices regarding his policy going forward, including an advisement regarding his right to designate a third-party addressee on his policy.

[2] In April 2020, Batista followed up again, explaining that "[a]ll [Siino] would need to do" to "reinstate[]" her policy was "send the 3 years worth of missed premiums."  The notice was too late, as Siino had already purchased her new life insurance policy from another provider.

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 42 of 62

## PROCEDURAL BACKGROUND

In April 2020, Siino filed a putative class action suit against FLIAC in the United States District Court for the Northern District of California.  In the action, Siino brought claims for declaratory relief under state and federal law, breach of contract, and violations of California's Unfair Competition Law (UCL).  Her claims were premised on FLIAC's alleged violation of two statutes, Sections 10113.71 and 10113.72 of the California Insurance Code, that the California Legislature enacted in 2012 (the Statutes).[3]

The Statutes set forth a "single, unified pretermination notice scheme" consisting of "three components" designed to minimize the chance that policy holders would inadvertently default.  *McHugh v. Protective Life Ins. Co.*, 12 Cal. 5th 213, 240 (2021).  First, the Statutes require insurers to give policy owners a 60-day grace period to pay a missed premium payment (the Grace Period Requirement).  Cal. Ins. Code § 10113.71(a).  Second, they require insurers to notify policy owners of their right to designate a third party to receive notices regarding overdue premiums or impending terminations of their policy (the Designee Notice

---

[3] Although the issuance of Siino's policy preceded the enactment of the Statutes, the California Supreme Court held in *McHugh v. Protective Life Insurance Company*, 12 Cal. 5th 213, 222 (2021), that the Statutes "apply to all life insurance policies in force as of January 1, 2013," the date on which the Statutes went into effect.  There is thus no dispute that, under *McHugh*, the Statutes apply to Siino's policy, and its regulatory requirements are therefore "deemed to be incorporated into [her] policy." *Id.* at 224; *see Cal-Farm Ins. Cos. v. Fireman's Fund Am. Ins. Cos.*, 25 Cal. App. 3d 1063, 1071 (1972).  As a result, the parties agree that any violations of the Statutes by FLIAC are substantively equivalent to a breach of FLIAC's policy, i.e., its contract, with Siino.

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 43 of 62

Requirement). *Id.* § 10113.72(a), (b). Third, and finally, the Statutes require insurers to provide notices regarding any unpaid premium, within 30 days of the missed payment, and notices regarding impending termination for nonpayment, at least 30 days before termination (the Pretermination Notice Requirement). *Id.* §§ 10113.71(b), 10113.72(c). Siino specifically alleged that FLIAC violated the latter two requirements, i.e., the Designee Notice Requirement and the Pretermination Notice Requirement.

In June 2020, FLIAC moved to dismiss for lack of standing; the district court granted the motion only as to Siino's request for injunctive relief under the UCL, which it dismissed without prejudice. Siino declined to amend her complaint or reincorporate the claim, and the parties proceeded to discovery. Siino then moved for class certification in April 2021. The district court denied Siino's motion on the ground that damages could not be calculated on a class-wide basis. Finally, in December 2022, Siino moved for summary judgment on her claim for federal declaratory relief under the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, *et seq.* Through her motion, Siino sought a declaration that (1) FLIAC failed to comply with the Statutes in terminating her policy, (2) her policy remained valid and enforceable, and (3) FLIAC could not require Siino to pay back her missed premiums.

The district court granted Siino's motion in part and denied it in part. It found that Siino's requested declaratory relief was not duplicative of her other claims and therefore was appropriately before the court. It further found that Siino was not required to prove all the elements of a breach of contract claim in order to obtain her requested declaratory relief. Applying that understanding, the district court held that FLIAC failed to comply with the Statutes in terminating

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 44 of 62

Siino's policy and that Siino's policy remained valid and enforceable. The district court held, however, that because the declaratory relief Siino sought was akin to specific performance, Siino was required to tender all overdue premiums to FLIAC in order to maintain her policy going forward. The district court ordered the parties to meet and confer regarding the total amount of overdue premiums that Siino owed and the deadline by which she would tender that amount to FLIAC.

Following the summary judgment ruling, the parties stipulated that Siino would tender $978 to FLIAC, encompassing the six premium payments she had missed from 2018 to 2023, along with six percent interest. Siino complied with the stipulation by timely submitting this sum to FLIAC. Thereafter, the parties stipulated to the voluntary dismissal, with prejudice, of Siino's remaining claims for breach of contract, state-law declaratory relief, and violations of the UCL. With Siino's federal-law declaratory judgment claim resolved by the court's summary judgment ruling, and all other claims dismissed, the parties jointly requested the entry of final judgment. The district court granted the request and entered judgment in August 2023.

FLIAC timely appeals from that result, raising two primary challenges to the district court's summary judgment ruling. First, FLIAC contends that the district court abused its discretion by entertaining Siino's requested declaratory relief because it was duplicative of her breach of contract claim. Second, FLIAC contends that the district court erred by granting this declaratory relief without a proper evidentiary record. FLIAC specifically contends that, because Siino's requested declaratory relief overlapped with her claim for breach of contract, Siino was required to prove all the elements of breach of contract, including causation,

in order to achieve her requested relief. FLIAC argues that Siino failed to make this showing because the undisputed evidence reflects that FLIAC did not breach its contract with Siino and that, even if it did, its actions were not the legal cause of Siino's injury.

While FLIAC's appeal was pending, we issued our opinion in *Small*. That opinion, which concerned the certification of a class seeking relief under the Statutes, addressed a split among courts in our circuit as to whether questions of causation are relevant to breach of contract claims brought pursuant to the Statutes. *Small*, 122 F.4th at 1192. As *Small* noted, one group of courts in our circuit had adopted a "violation-only" approach under which an insurer's violation of the Statutes was adequate to support a breach of contract claim, irrespective of the plaintiff's ability to show a causal relationship between the violation and any resulting injuries. *Id.* Other courts applied a standard "causation" approach, requiring "that the plaintiff . . . not only allege a violation of the Statutes, but . . . also show that the violation caused them harm." *Id.* at 1193. *Small* adopted the latter theory. *Id.* It held that courts must "apply the usual requirements for a breach of contract claim in cases based on claimed violations of the Statutes." *Id.* at 1195.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to review the district court's summary judgment ruling pursuant to 28 U.S.C. § 1291. *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 429–30 (1985). "We review de novo a district court's grant or denial of summary judgment." *Botosan v. Paul McNally Realty*, 216 F.3d 827, 830 (9th Cir. 2000). "Thus, on appellate review, we employ the same standard used by the trial court under Federal Rule of Civil Procedure 56(c)." *Animal Legal*

*Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016).  Under that standard, "[s]ummary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013) (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011)); *see Orloff v. Cleland*, 708 F.2d 372, 375 (9th Cir. 1983).

"[O]ur review of a district court's decision to entertain an action under the Declaratory Judgment Act is deferential, under the abuse of discretion standard." *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995).

## ANALYSIS

### I.  The District Court Did Not Abuse Its Discretion by Entertaining Siino's Requested Declaratory Relief.

FLIAC first argues that the district court abused its discretion by entertaining Siino's request for declaratory relief under the DJA.  As FLIAC notes, the DJA creates a permissive scheme under which a district court "may," but need not, "declare the rights and other legal relations of any interested party." 28 U.S.C. § 2201(a); *see Gov't Emps. Ins.*, 133 F.3d at 1223.  Thus, "the district court has discretion to determine whether maintaining jurisdiction over the declaratory action would be appropriate." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1107 (9th Cir. 2011).   In evaluating the propriety of a declaratory action, the "district court is to consider a variety of factors, including whether retaining        jurisdiction        would . . .        risk        duplicative

litigation . . . [or] serve a useful purpose in clarifying the legal relations at issue." *Id.*

FLIAC argues that Siino's requested declaratory relief was not appropriately before the district court because it was duplicative of the breach of contract claim that Siino asserted in her complaint. FLIAC contends that, due to the close similarities between the two claims, the district court was foreclosed from adjudicating both. Siino responds that, although the district court had the power to set aside her request for declaratory relief, it did not abuse its discretion by declining to do so because the claim was not superfluous. Thus, the relevant question is whether any substantive differences exist between the two claims.

We conclude that the two claims are substantively different. As noted, Siino, through her claim for declaratory relief, sought a legal declaration that: (1) "Foresters did not comply with all of the provisions of [the Statutes] before it terminated Mrs. Siino's Policy on February 26, 2018"; (2) "Mrs. Siino's Policy remains valid and enforceable"; and (3) "Foresters may not require Mrs. Siino to pay 'back premiums' accruing since January 2018 in order to revive the Policy." By contrast, through her claim for breach of contract, Siino sought damages based on her contention that FLIAC "breached and continue to breach the express terms of their life insurance policies, including Plaintiff's Policy, as well as the statutory mandates regarding such policies."

These claims are not coextensive because they answer different questions and turn on different considerations. For example, whereas Siino's declaratory relief claim concerns her entitlement to a legal declaration of her rights and obligations with respect to her FLIAC policy, Siino's breach of contract claim concerns her entitlement to damages based

SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.          13

on FLIAC's contractual violations.  The difference between these two inquiries is material, affecting not only how Siino's injuries are remedied but also what is required to access those remedies.  A claim for breach of contract, for instance, requires evidence of damages, *Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004), while parts of Siino's requested declaratory relief does not.  Similarly, while portions of Siino's declaratory relief focus only on FLIAC's actions, Siino's breach of contract claim focuses on the effects and consequences of those actions.  In this way, the simultaneous adjudication of both claims would involve different inquiries and present a low risk of "duplicative litigation."  *Allstate Ins. Co.*, 634 F.3d at 1107.

Further, even if Siino's claims are slightly duplicative, the adjudication of both could "serve a useful purpose in clarifying the legal relations at issue."  *Id.*; *see, e.g.*, *Steen v. Am. Nat'l Ins. Co.*, 609 F. Supp. 3d 1066, 1073 (C.D. Cal. 2022).  In particular, although Siino's declaratory relief and breach of contract claims could both result in a determination that her policy was improperly terminated, only Siino's declaratory relief claim carries that idea one step forward by asking whether Siino is obligated to pay back her overdue premiums.  That question speaks to the future obligations of the parties, an issue that would not be addressed by Siino's breach of contract claim.  Therefore, for this reason alone, the adjudication of Siino's declaratory relief claim would not be a waste of judicial resources.  *See Gov't Emps. Ins.*, 133 F.3d at 1225–26.

For the foregoing reasons, we conclude that the district court did not abuse its discretion by entertaining Siino's request for declaratory relief.  We proceed to evaluate the merits of the relief that the district court granted.

## II. The District Court Erred in Part by Granting Siino's Requested Declaratory Relief.

After electing to entertain Siino's request for declaratory relief, the district court proceeded to grant it, at least in part, by holding that FLIAC failed to comply with the Statutes in terminating Siino's policy and that, as a result, her policy remained effective. In reaching this conclusion, the district court noted the overlap between Siino's declaratory and breach of contract claims, and it evaluated evidence pertaining to whether FLIAC had violated the Statutes. Nevertheless, the district court declined to consider the traditional elements of breach of contract, such as causation and damages, explaining that they did not bear on its decision whether to grant declaratory relief. *See Miles v. Deutsche Bank Nat'l Tr. Co.*, 236 Cal. App. 4th 394, 402 (2015). FLIAC contends that this was erroneous and that Siino was required to prove all the elements of breach of contract in order to secure her requested declaratory relief. FLIAC further asserts that, had the district court insisted upon the proper presentation of evidence, Siino's declaratory claim would have fallen short. We evaluate these issues in turn.

### a. Relief Under the DJA is Context-Specific.

As noted, we begin by reviewing the legal framework and requirements for declaratory relief. Although the DJA allows a court to "declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a), it "does not create new substantive rights," *Republic of Marsh. Is. v. United States*, 865 F.3d 1187, 1199 n.10 (9th Cir. 2017). Instead, the DJA is a purely remedial statute that "provides an affirmative remedy only when a cause of action otherwise exists." *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 876 (9th

SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.          15

Cir. 2022) (per curiam); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (relief under the DJA "presupposes the existence of a judicially remediable right"). Frequently, as in the present action, the cause of action accompanying a request for declaratory judgment is breach of contract, for which the declaratory judgment serves as a remedy. *See, e.g.*, *Allstate*, 634 F.3d at 1108. In such cases, the declaratory judgment may be used to affirm the existence of a breach of contract or to clarify any attending contractual obligations. *See Dizol*, 133 F.3d at 1222 n.2, 1225–26.

Yet the fact that declaratory relief must arise from a "valid legal predicate," such as breach of contract, *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012), does not necessarily mean that declaratory relief requires proving the underlying claim. FLIAC suggests, for example, that because Siino seeks declaratory relief arising from her breach of contract claim, Siino must prove each of the elements of breach of contract to earn her requested declaratory relief. But this contention, which is at the core of FLIAC's appeal, is without support. FLIAC provides no authority or case that is on point. To the contrary, and as Siino points out, the only decisions that have opined on the legal requirements for declaratory relief have described the necessary showing in broad strokes. One such decision held simply that declaratory relief requires no more than "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941));

*see Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1192 (9th Cir. 2000).**[4]**

Nevertheless, "[e]ven the most liberal construction that can be placed upon [the DJA] will not warrant the courts in granting affirmative relief by way of a declaratory judgment in the absence of pleading and proof warranting such relief." *See Mackay v. Whitaker*, 116 Cal. App. 2d 504, 510 (1953) (quoting 1 Anderson, *Declaratory Judgments* § 198 (2d ed. 1951)). Thus, a plaintiff seeking declaratory relief must adduce an evidentiary record sufficient to support the terms of their requested declaration. The evidentiary record that is required will depend on "the nature of the relief asked for and granted[,]" as opposed to the precise claim underlying the declaratory judgment remedy. *Pac. Portland Cement Co. v. Food Mach. & Chem. Corp.*, 178 F.2d 541, 546 (9th Cir. 1949); *see, e.g.*, *Hoeck v. City of Portland*, 57 F.3d 781, 787 (9th Cir.), *as amended* (July 10, 1995). In other words, what a claimant must prove to earn declaratory relief is context-specific: It may overlap entirely with the underlying claim, as FLIAC suggests, or it may turn on certain smaller issues or topics to which the desired declaration pertains.

Two recent examples help to illustrate this principle. In *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 3 F.4th 605 (4th Cir. 2021), the plaintiff, seeking to be excused from making required payments pursuant to a contract, requested

---

[4] California courts are in accord that declaratory relief need not hew exactly to the underlying claim. *See Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 647 (2009) ("[California law] does not require a breach of contract in order to obtain declaratory relief, only an 'actual controversy.'" (quoting Cal. Civ. Proc. Code § 1060)); *see, e.g.*, *Fujimoto v. W. Pioneer Ins. Co.*, 86 Cal. App. 3d 305, 313 (1978) (evaluating declaratory relief arising from breach of contract without considering causation or damages).

a declaration that the defendant had "materially breached the agreement." *Id.* at 609–10, 613–14.   In requesting this declaration, the plaintiff "did not seek a sword—it neither alleged a breach of contract claim nor sought declaratory relief on all the elements of such a claim." *Id.* at 613. Instead, it sought a "shield"—a "statement of its rights and responsibilities based on its belief that [the defendant] breached the [a]greement." *Id.*  As a result, when reviewing the jury verdict on appeal, the court only evaluated the sufficiency of the evidence regarding breach, and it rejected the defendant's argument that the plaintiff had been required to introduce "evidence on all the elements of an action for breach of contract," including causation and damages. *Id.* The court found that, "[w]hile [the defendant] would have [it] analyze whether the jury properly found all elements met for a breach of contract claim, that is not the question the jury was asked because that is not the claim [the plaintiff] brought." *Id.*

These circumstances contrast with those in *Small*.  There, a putative class seeking relief under the Statutes sought "a declaration that their life insurance policies were improperly lapsed by [the defendant] because it failed to strictly comply with the Statutes before it lapsed those policies." *Small*, 122 F.4th at 1190.  Like in *Drummond*, the district court awarded the requested declaration without considering evidence of causation or damages. *Id.* at 1201; *see Drummond*, 3 F.4th at 613–14.  But we reversed. *Small*, 122 F.4th at 1203. Scrutinizing the terms of the class's requested relief, we reasoned that it effectively sought a "declar[ation] that the[ir] policies 'improperly lapsed,'" and thus remained valid, "*because* [the defendant] failed to comply with the Statutes." *Id.* at 1201.  In other words, the requested relief did not stop at the question of breach—whether the

defendant violated the Statutes or not—but, instead, further implicated the practical effects of that breach—whether the violation of the Statutes had resulted in the continued validity of the class's policies. *Id.* Because the declaration, in this way, functionally "adjudicate[d] the breach of contract claim," we concluded that the district court could not grant the declaration in the absence of evidence supporting all elements of breach of contract, including "causation and damages." *Id.*

### b. Different Portions of Siino's Requested Declaratory Relief Required Different Evidentiary Showings.

This background informs our analysis of Siino's requested declaratory relief. As noted, there were two main components to that relief. First, Siino sought a declaration that FLIAC failed to comply with the Statutes when terminating her policy. Second, Siino sought a declaration that, as a result of FLIAC's failure to comply with the Statutes, FLIAC's termination of her policy was improper and ineffective; Siino's policy remained valid and enforceable; and Siino was not required to tender any overdue premium payments. As illustrated by *Drummond* and *Small*, these declarations correspond to different issues, and, accordingly, require different forms of evidence.

The first portion of the declaration, regarding FLIAC's failure to comply with the Statutes, is most analogous to *Drummond*. This declaration pertains narrowly to the limited question of breach—whether FLIAC, in terminating Siino's policy, did so in a way that was or was not compliant with the applicable rules set forth in the Statutes. Thus, as in *Drummond*, the requested declaration is not an offensive "sword" that Siino could use to collect damages, but, instead,

SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.          19

only a "shield" that Siino might use "to protect [herself]
should [FLIAC] seek payment" of overdue premiums.   3
F.4th at 613.  As a result, before awarding this portion of the
declaration, the district court was not required to analyze all
the elements of breach of contract.  *Id.*  Instead, because the
requested relief purely corresponded to the question of
breach, that is the sole element that Siino was required to
establish.  *See id.*; *see also, e.g.*, *Fujimoto*, 86 Cal. App. 3d
at 313.

The outcome is different with respect to the second
portion of Siino's requested declaration, regarding the
effects of FLIAC's contractual breach and the continued
viability of Siino's policy.  Like the requested declaration in
*Small*, this declaration raises the question whether Siino's
policy remains valid "*because* [FLIAC] failed to comply
with the Statutes."  *Small*, 122 F.4th at 1201.  Therefore, in
contrast with *Drummond* and the first portion of Siino's
requested declaration, the second portion of the requested
declaration is not limited to the question of breach—whether
FLIAC failed to comply with the Statutes—but goes further
to probe the consequences of that breach—whether FLIAC's
failure to comply means that Siino's policy was "improperly
lapsed" and remains valid going forward.  *Id.*  As a result, as
in  *Small*,  this  requested  declaration  functionally
"adjudicate[s] [Siino's] breach of contract claim" and
therefore turns on Siino's ability to prove the elements of
breach of contract, including causation and damages.  *Id.*

### c.  The District Court Did Not Err by Granting the First Portion of Siino's Requested Declaratory Relief.

We next evaluate Siino's presentation of evidence,
focusing first on the first portion of her requested declaratory

relief—the declaration that FLIAC failed to comply with the Statutes in terminating Siino's policy. As discussed, we have concluded that this relief pertained only to the question of breach, and the district court found that Siino established that element through evidence that FLIAC violated the Statutes' Pretermination Notice and Designee Notice Requirements. We discern no error in these findings. Accordingly, we affirm the district court's decision to grant the first portion of Siino's requested relief.

### i. Pretermination Notice Requirement

We first conclude that the district court did not err by finding that FLIAC violated the Statutes' Pretermination Notice Requirement. This rule requires that insurers provide insureds with a "notice of pending lapse and termination" at least 30 days prior to terminating a policy for unpaid premiums. Cal. Ins. Code §§ 10113.71(b)(1), 10113.72(c). Whether FLIAC satisfied this rule turns on the details of the notice it sent to Siino on February 26, 2018, following her failure to pay her premium payment due on January 26, 2018.[5] The notice stated that "[t]he 31 day grace period on [Siino's] policy ha[d] expired and [the] policy ha[d] now lapsed." It then stated that Siino "still ha[d] the opportunity to reinstate [her] policy by sending in the premium" before March 28, 2018. The notice concluded with the statement that "[i]f [Siino] fail[ed] to make a payment within the specified timeframe, [her] policy w[ould] still be considered lapsed."

FLIAC's notice to Siino does not satisfy the Pretermination Notice Requirement because it was not sent

---

[5] It is undisputed that FLIAC sent no other notice to Siino that might satisfy the Pretermination Notice Requirement.

"at least 30 days prior to the effective date of termination."
Cal. Ins. Code § 10113.71(b)(1).  According to the notice's
own description, Siino's policy had already "lapsed" at the
time the notice was sent.  Thus, whereas an appropriate
pretermination notice would have advised Siino about the
"pending lapse" of her policy and reminded her to pay her
premium before it lapsed, *id.*, FLIAC's notice did exactly the
opposite—it advised Siino that her policy had already
"lapsed" and offered her a retroactive opportunity to
"reinstate" the lapsed policy by submitting her overdue
payment.  This notice failed to provide Siino with the
pretermination warning she was owed under the Statutes.
*See id.*

FLIAC responds that, even though its notice stated that
Siino's policy had lapsed, its own records show that Siino's
policy remained in force at the time of the notice, such that
FLIAC would have paid a claim if Siino had submitted one
at that time.  However, as the district court correctly noted,
this consideration is not relevant to whether FLIAC
complied with the Pretermination Notice Requirement.  As
noted, that requirement mandated that FLIAC's
pretermination notice advise Siino about the "pending lapse
and termination" of her policy.  *Id.*  Thus, even if Siino's
policy had not truly lapsed as of February 26, 2018, the only
way for FLIAC to satisfy its statutory obligations was to
warn her, within 30 days of termination, that lapse was
imminent.  Because FLIAC did not do so, we conclude that
there is no genuine dispute of fact that FLIAC violated the
Pretermination Notice Requirement.

### ii.  Designee Notice Requirement

We further conclude that the district court did not err by
finding that FLIAC violated the Statutes' Designee Notice

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 57 of 62
Case: 23-16176, 04/01/2025, ID: 12923580, DktEntry: 69-1, Page 22 of 27

22          SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.

Requirement.  This rule requires that insurers provide policy owners "the right to designate at least one person . . . to receive notice of lapse or termination of a policy for nonpayment of premium."  Cal. Ins. Code § 10113.72(a).  The insurer shall, upon the initiation of a new policy, "provide each applicant with a form to make the designation."  *Id.*  Thereafter, the insurer shall "notify the policy owner annually of the right to change the written designation or designate one or more persons."  *Id.* § 10113.72(b).  Since the Statutes took effect on January 1, 2013, FLIAC was obligated to provide these notices to Siino each year from 2013 onward.  *McHugh*, 12 Cal. 5th at 220, 225.

In connection with her motion for summary judgment, Siino affirmatively declared that FLIAC had not satisfied the Designee Notice Requirement.  Specifically, she stated that "at no time in or since 2013 did [FLIAC] advise [her] of [her] right to designate another person to receive important policy notices, like notices of premiums being due, premiums being missed, or impending lapse."  FLIAC did not rebut this declaration.  Instead, it introduced the deposition testimony of David Schimmel, a corporate representative of FLIAC, who stated that he could not "confirm or deny whether" Siino received "any notice in writing that she had a right to designate another individual to receive notices before her policy would be lapsed or terminated."  Schimmel further testified that FLIAC had unsuccessfully "exhausted all options" to "ascertain" whether Siino had received a designation notice.

Because Siino affirmatively declared that FLIAC never sent her notice of the right to designate, and FLIAC failed to bring forward opposing evidence suggesting that it did so, there is no genuine dispute of fact that FLIAC violated the

SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.            23

Designee Notice Requirement.  *See* Fed. R. Civ. P. 56(c)(1),
(e); *United States v. Falcon*, 805 F.3d 873, 876 (9th Cir.
2015).  FLIAC nevertheless contends that it was not required
to bring forward opposing evidence because Siino, having
moved from her address on file with FLIAC, "lack[ed] the
personal knowledge necessary to say that FLIAC did not
send the designation notice to her address of record."
FLIAC suggests that because Siino's declaration was "self-
serving" in this way, it was not required to rebut it.

FLIAC's argument is not persuasive because the
undisputed evidence at summary judgment reflected that
Siino, despite her move, retained access to mail sent to her
original address—the one that was on file with FLIAC—
until 2015.  FLIAC does not dispute that its obligation to
begin sending Siino annual notices of her right to designate
commenced in 2013.  Therefore, although there could be
reason to doubt Siino's declaration that she did not receive
notices from 2015 onward, there is no reason to doubt her
declaration that she did not receive notices in 2013 and 2014.
With this consideration in mind, we conclude that there is no
genuine issue of fact that FLIAC violated the Designee
Notice Requirement.

Because we agree with the district court that FLIAC
violated two of the requirements set forth in the Statutes, we
affirm the district court's decision to grant the first portion
of Siino's requested declaratory relief.[6]

---

[6] FLIAC also argues that the district court erred by granting this relief
without considering its affirmative defenses, including waiver,
ratification, and failure to mitigate.  FLIAC is correct that a district court
must "provide [an appellant] an opportunity to present affirmative
defenses to liability."  *Walgreen Ariz. Drug Co. v. Levitt*, 670 F.2d 860,
863 (9th Cir. 1982).  But as we have explained, the first portion of Siino's

### d. The District Court Erred by Granting the Second Portion of Siino's Requested Declaratory Relief.

Finally, we turn to the second portion of Siino's requested declaratory relief—the declaration that Siino's policy remained valid and enforceable. As discussed, we conclude that this relief required Siino to prove all the elements of breach of contract, including causation. *Miles*, 236 Cal. App. 4th at 402. Although the district court did not address this element, it presents a straightforward inquiry in the context of Siino's claims: By failing to comply with the Pretermination Notice and Designee Notice Requirements set forth in the Statutes, did FLIAC practically cause the harm of which Siino now complains, i.e., the termination of her FLIAC policy?

Such causation questions can prove challenging in the many cases in which policyholders intentionally allow their policies to lapse or otherwise fail to manage their policies. "For example, 'although the Statutes require Insurers to give Insureds an opportunity to designate a designee, if the Insured would never have designated a designee anyway, then . . . damages cannot be said to result from the Insurer's failure to provide an opportunity to designate.'" *Small*, 122 F.4th at 1191–92 (quoting *Steen v. Am. Nat'l Ins. Co.*, No. 20-CV-11226-ODW, 2023 WL 4004192, at *12 (C.D. Cal. June 14, 2023)). Similarly, although the Statutes require insurers to provide notice before terminating a policy for unpaid premiums, if the insured intentionally declined to pay

---

declaratory relief corresponded only to the question of breach and did not adjudicate Siino's underlying breach of contract claim. Therefore, the affirmative defenses that FLIAC asserted were not relevant to the district court's decision to grant this relief.

Case: 23-16176, 05/15/2025, ID: 12929426, DktEntry: 74, Page 60 of 62
Case: 23-16176, 04/01/2025, ID: 12923580, DktEntry: 69-1, Page 25 of 27

SIINO V. FORESTERS LIFE INS. AND ANNUITY CO.          25

their premiums, the eventual termination of the policy cannot be fairly characterized as the fault of the insurer. *See id.*

As previously noted, the difficulty of these cases prompted a doctrinal split among courts in our circuit, under which some courts began to ignore questions of causation entirely. *Id.* at 1192. This split was unresolved at the time the district court issued its summary judgment ruling in this case. However, this split was resolved by *Small*, which concluded "that a breach of contract claim in this context should operate [no] differently than it usually would: by requiring a breach that caused the plaintiff's injury." *Id.* at 1193–94. Under this rule, a plaintiff pursuing a breach of contract claim under the Statutes must show not only that the defendant failed to comply with the Statutes, but, further, that this lack of compliance is the but-for and proximate cause of the plaintiff's injury. *Id.* Making this showing requires the plaintiff to "demonstrate that they did not knowingly or intentionally let the[ir] policy lapse such that the Insurer's compliance with the Statutes would have caused the plaintiff to pay their premiums and retain the policy." *Id.* at 1193. Stated differently, the plaintiff must prove that they did not engage in any conduct that could have severed the causal relationship between the defendant's actions and the plaintiff's injury. *Id.*

That standard is not satisfied here. As noted, Siino's claimed injury is the improper termination of her policy, and she claims that this injury is the result of FLIAC failing to provide her with pretermination notice and notice of her designation rights, as the Statutes require. But even if FLIAC had sent Siino these notices, they would not have reached her: Because the record makes clear that Siino moved in 2014 and failed to successfully update her address

on file, there is no dispute that any additional notices sent by
FLIAC would have been directed to an old address where
Siino would not have received them. Against this
background, the ultimate termination of Siino's policy
"cannot be said to result from [FLIAC]'s failure to provide"
its statutorily required notices. *Small*, 122 F.4th at 1192
(quoting *Steen*, 2023 WL 4004192, at *12). Instead, the only
action with a causal effect on the termination of the policy is
Siino's own: her unresolved failure to pay her annual
premium in 2018.

For the foregoing reasons, we conclude, based on the
undisputed evidence presented before the district court, that
FLIAC's violations of the Statutes were not the legal cause
of Siino's injury. Thus, we reverse the district court's
decision to grant the second portion of Siino's requested
declaratory relief.[7]

## CONCLUSION

We conclude that the district court did not abuse its
discretion by entertaining Siino's request for declaratory
relief. We further conclude that the district court did not err
by granting the first portion of Siino's requested declaratory
relief—a declaration that FLIAC failed to comply with the
Statutes. Because this declaration pertained solely to the
question of breach, that is the sole element that Siino was

---

[7] Because we find that Siino failed to establish causation, we do not reach
FLIAC's additional arguments that Siino failed to establish the elements
of damages and specific performance. *INS v. Bagamasbad*, 429 U.S. 24,
25 (1976) ("As a general rule courts . . . are not required to make findings
on issues the decision of which is unnecessary to the results they reach.").
We also do not reach FLIAC's argument that the district court erred by
failing to consider its affirmative defenses to this portion of Siino's
relief.

required to establish.  We find that Siino established this element through undisputed evidence that FLIAC violated two provisions of the Statutes: (1) the requirement that it provide notice prior to terminating a policy for unpaid premiums and (2) the requirement that it provide notice regarding designation rights.  Therefore, we affirm the district court's decision to grant the first portion of Siino's requested declaratory relief.

Nevertheless, we conclude that the district court erred in granting the second portion of Siino's requested declaratory relief—a declaration that her policy remained valid despite FLIAC's improper attempts to terminate it.  We find that, as in *Small*, this declaration functionally adjudicated Siino's breach of contract claim, and Siino was therefore obligated to establish all elements of breach of contract, including causation, to support the requested declaration.  122 F.4th at 1201.  We find that Siino failed to establish those elements because the undisputed evidence reflects that FLIAC's violations of the Statutes were not the legal cause of Siino's injury.  Therefore, we reverse the district court's decision to grant the second portion of Siino's requested declaratory relief.

In conclusion, we affirm in part and reverse in part the district court's summary judgment ruling.  Because all of Siino's other claims were dismissed with prejudice, we remand to the district court solely for the purpose of entering final judgment.

**REVERSED in part, AFFIRMED in part, and REMANDED.**

Each side shall bear its own costs on appeal.